Erik **WILLIAMS** and Michael Irvin, Appellants,

v.

The **CITY OF DALLAS**, Bennie R. Click, James Chandler, David Goelden, Ross Salverino, and Kim Sanders, Individually and in their Official Capacities as Police Officers of the City of Dallas, Appellees.

No. 05–00–01095–CV.

Court of Appeals of Texas, Dallas.

Aug. 8, 2001.

Dennis G. Brewer, Jr., Brewer, Brewer, Anthony & Middlebrook, Irving, Peter R. Ginsberg, Washington, DC, for Appellant.

Mark E. Goldstucker, Assistant City Attorney, Gary D. Elliston, DeHay & Elliston, Gerald Vincent Bright, Walker Bright & Lewis, P.C., Dallas, for Appellee.

Before Justices MORRIS, WHITTINGTON, and JAMES.

## OPINION

Opinion by Justice WHITTINGTON.

Erik Williams and Michael Irvin appeal the trial court's summary judgment in fa-vor of the City of Dallas, Bennie R. Click, James Chandler, Ross Salverino, Kim Sanders (collectively "appellees"), and David Goelden, individually and in their official capacities as police officers of the City. In three issues, appellants contend the trial judge erred in granting summary judgment in favor of appellees because (i) appellants' claims are not barred by collateral estoppel, (ii) the City is liable under the Texas Tort Claims Act,[1] and (iii) the individual appellees are not protected by official immunity. In two other issues, appellants contend the trial judge erred in granting summary judgment in favor of Goelden because they exercised reasonable diligence in serving Goelden and Goelden had notice of the state claims, avoided service, and suffered no prejudice by any delay in service of the petition. We reverse the trial court's summary judgment in favor of Goelden. In all other respects, we affirm the trial court's summary judgment.

## BACKGROUND

On December 30, 1996, Marty Griffin, a reporter for a Dallas television station, called the Dallas Police Department ("DPD") and reported that Nina Shahravan had been raped. When DPD officers talked to Shahravan, she told them that on December 29, 1996, Williams and another man raped her at Williams's residence while Irvin held a gun to her head. After interviewing Shahravan, officers obtained a search warrant for Williams's house which they executed the morning of December 31, 1996. During the search, officers seized felt from a pool table, three handguns, and a variety of audiotapes, videotapes, and photographs. After a thorough investigation of the case, the DPD filed charges against Shahravan for perju-

1. TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001– .109 (Vernon 1997 & Supp.2001).

ry. No charges were filed against appellants.

Appellants filed suit against appellees and Goelden in federal district court, alleging both federal and state causes of action. Appellees and Goelden answered and subsequently filed a motion for summary judgment on all federal claims. On March 5, 1999, U.S. District Judge Sidney Fitzwater granted summary judgment in favor of appellees and Goelden and dismissed without prejudice the remaining state claims.[2] On April 2, 1999, appellants filed suit in state court against appellees and Goelden alleging claims for defamation, conspiracy to defame, intentional infliction of emotional distress, negligence, conversion, trespass, invasion of privacy, and abuse of process. Later that month, appellants served appellees; Goelden, however, was not served until October 1999.

Goelden filed a motion for summary judgment based solely on the affirmative defense of limitations on the ground that appellants failed to exercise reasonable diligence in serving him. Appellees filed motions for summary judgment on the grounds that appellants' claims were barred by collateral estoppel or, alternatively, appellees had official immunity. The trial judge granted summary judgment in favor of appellees and Goelden. This appeal ensued.

RULE 166a(c) SUMMARY JUDGMENT STANDARD

 The standards for reviewing summary judgment under rule 166a(c) are well established. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Orozco v. Dallas Morning News, Inc.*, 975 S.W.2d 392, 394 (Tex.App.—Dallas 1998, no pet.). The summary judgment motion must expressly present specific grounds for summary judgment. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993); *Sullivan v. Bickel &*

*Brewer*, 943 S.W.2d 477, 480 (Tex.App.—Dallas 1995, writ denied). To prevail on summary judgment, a defendant must either disprove at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *Int'l Union United Auto. Aerospace & Agric. Implement Workers of Am. Local 119 v. Johnson Controls, Inc.*, 813 S.W.2d 558, 563 (Tex.App.—Dallas 1991, writ denied). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982). Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); *Muckelroy v. Richardson Indep. Sch. Dist.*, 884 S.W.2d 825, 828 (Tex.App.—Dallas 1994, writ denied). Where, as here, the summary judgment does not state the grounds upon which it was granted, the nonmovant must show on appeal that each independent ground alleged is insufficient to support the summary judgment granted. *See Thomson v. Norton*, 604 S.W.2d 473, 476 (Tex.Civ.App.—Dallas 1980, no writ); *Orozco*, 975 S.W.2d at 394. If a movant does not show its entitlement to judgment as a matter of law, we must remand the case to the trial court for further proceedings. *See Gibbs v. Gen. Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970); *Tex. Stadium Corp. v. Sav. of Am.*, 933 S.W.2d 616, 618 (Tex.App.—Dallas 1996, writ denied).

**2.** The Fifth Circuit affirmed the federal district court's judgment on October 25, 1999.

#### Appellees' Motions for Summary Judgment

█ In three issues, appellants contend the trial judge erred in granting summary judgment in favor of appellees because appellants' claims are not barred by collateral estoppel, the City is liable under the Texas Tort Claims Act, and the individual appellees are not protected by official immunity.[3]

#### Collateral Estoppel

█ Collateral estoppel promotes judicial efficiency and precludes inconsistent judgments by preventing the relitigation of any ultimate fact issue previously litigated even though the subsequent suit brings a different cause of action. *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 579 (Tex.2001); *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 521 (Tex.1998). It applies "when an issue decided in the first action is actually litigated, essential to the prior judgment, and identical to an issue in a pending action." *Petta*, 44 S.W.3d at 579. To invoke collateral estoppel in a state court proceeding by citing a prior federal decision, a party must establish (i) the prior federal decision resulted in a judgment on the merits, (ii) the same fact issues sought to be concluded were actually litigated in the federal court, (iii) the disposition of those issues was necessary to the outcome of the prior federal litigation, and (iv) the parties were cast as adversaries in both the federal and state proceedings. *Winston v. Am. Med. Int'l, Inc.*, 930 S.W.2d 945, 951 (Tex.App.—Houston [1st Dist.] 1996, writ denied). Because the parties in this case are the same parties cast as adversaries in the federal action, we need only discuss whether the facts appellants rely on in their state causes of action were previously litigated in federal court and were essential to that judgment.

Before turning to these issues, however, we first address appellants' arguments that, because a different burden of proof applied at the federal level, collateral estoppel cannot apply in this state court case. First, appellants contend their burden in federal court was higher than in state court because, to prevail in federal court on a federal civil rights action, appellants had to prove appellees were "deliberately indifferent to a constitutional right." Appellants claim this "heightened proof requirement" augments a plaintiff's normal preponderance of the evidence standard. Appellants argue that because they did not bring a federal civil rights action in the state lawsuit, they only would be required in state court to meet the "preponderance of the evidence" standard and not the "heightened" standard of proof to establish "deliberate indifference." Under these circumstances, appellants argue collateral estoppel should not apply to bar their state law claims.

For the following reason, we conclude we need not decide appellants' argument. In the federal lawsuit, Judge Fitzwater did not reach the issues related to the deliberate indifference elements; to the contrary, he granted summary judgment based on facts unrelated to those elements. Because Judge Fitzwater did not reach the issue of deliberate indifference in the fed-

---

**3.** Appellants also complain that the trial judge "refused repeated requests to issue findings of fact and conclusions of law." The law in Texas is well settled that the trial judge "should not make, and an appellate court cannot consider, findings of fact in connection with a summary judgment." *IKB Indus., Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 441 (Tex.1997); *Linwood v. NCNB Tex.*, 885 S.W.2d 102, 103 (Tex.1994) (findings of fact and conclusions of law have no place in summary judgment proceeding). Because findings of fact are inappropriate in summary judgment proceedings in Texas, appellants' argument lacks merit.

eral causes of action, we need not decide whether a party should be allowed to relitigate ultimate fact issues previously litigated under a heightened proof requirement.

■ Appellants also argue they are not barred by collateral estoppel because of the difference "between the standards for resolving summary judgment in federal court and for resolving summary judgment in Texas." According to appellants, because their burden is higher in federal court than in state court, the federal summary judgment does not preclude relitigation of the same facts in state court. We disagree. When the movant in federal court is the defendant, he must demonstrate the lack of any genuine issue of material fact concerning the plaintiff's claims to prevail on summary judgment. FED.R.CIV.P. 56(c). Although he need not disprove the plaintiff's claim, the defendant must point out the absence of evidence to support the claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden on the plaintiff as nonmovant is to establish the existence of a fact issue on an essential element of the plaintiff's case with respect to which the plaintiff has the burden of proof. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (plaintiff has burden of showing need for trial, in other words, whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party"). In state court, under a traditional summary judgment motion, the defendant as movant must either disprove at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *Espalin v. Children's Med. Ctr.,* 27 S.W.3d 675, 682 (Tex.App.—Dallas 2000, no pet.).

The plaintiff then has the burden to present evidence raising a genuine issue of material fact to preclude summary judgment. *City of Houston,* 589 S.W.2d at 678. Thus, under both federal and state summary judgment law, the burden on the nonmovant plaintiff is to present evidence of a genuine issue of material fact. Because the burdens of nonmovant plaintiffs having to raise a genuine issue of material fact are similar, we conclude appellants' argument lacks merit.

### Negligence and Abuse of Process

■ In their motions for summary judgment, appellees contended they were entitled to summary judgment because appellants' claims for negligence were barred by collateral estoppel. To prevail on a negligence cause of action, a plaintiff must establish (i) defendant owed plaintiff a duty to act according to a certain standard of care, (ii) defendant breached the duty of care, (iii) plaintiff was injured, and (iv) a causal connection exists between defendant's conduct and plaintiff's injury. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990); *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex. 1987). Appellees contended that, even assuming they owed a duty to act according to a standard of care, Judge Fitzwater held probable cause existed to search Williams's residence and that Click, Chandler, Sanders, and Salverino acted properly throughout the investigation.

■ In response, appellants alleged appellees breached the duties set out in the DPD General Orders Code of Conduct, including releasing appellants' names as rape suspects, circulating throughout the DPD for no investigatory purpose a videotape depicting Williams and Shahravan engaged in sexual intercourse, exceeding the scope of the warrant, and failing to timely return seized items. These facts, however,

were litigated in federal court. In addressing whether appellants' rights to protection under the Fourth and Fourteenth Amendments were violated, Judge Fitzwater held (i) appellants failed to produce any evidence that Click, Chandler, Sanders, and Salverino advised the media that appellants were rape suspects, (ii) once the officers executed the search warrant, all information contained in the warrant, including appellants' names as suspects, became public information, (iii) Williams did not produce any competent evidence regarding the "mishandling" or inappropriate circulation of the videotape or the failure to return the videotape, and (iv) the officers did not exceed the scope of the warrant when they seized felt from a pool table, three handguns, and a variety of audiotapes, videotapes, and photographs. Because the facts appellants rely upon to support their negligence causes of action were previously determined adversely in federal court, we conclude appellants' claims for negligence are barred by collateral estoppel. Furthermore, because appellants' negligence claims against Click, Chandler, Sanders, and Salverino are barred by collateral estoppel, appellants' claims against the City are also barred. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1997).[4]

We reach a similar conclusion with respect to appellants' claims for abuse of process. The elements of abuse of process are (i) the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process, (ii) the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process, and (iii) plaintiff was damaged as a result of the illegal act. *Graham v.*

*Mary Kay Inc.,* 25 S.W.3d 749, 756 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *Rose v. First Am. Title Ins. Co.,* 907 S.W.2d 639, 643 (Tex.App.—Corpus Christi 1995, no writ).

Appellants contended Click, Chandler, Sanders, and Salverino "abused a legal process of the court, a search warrant, by obtaining evidence which was not within the warrant's scope and by not returning the seized property as required by the warrant." As noted above, Judge Fitzwater held the officers did not exceed the scope of the warrant and Williams did not produce any competent evidence that officers failed to return the videotape. Accordingly, we conclude appellants' claims for abuse of process are barred by collateral estoppel.

### Conversion

Appellees also moved for summary judgment on the ground that Williams's claim for conversion was barred by collateral estoppel. Conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another which is to the exclusion of, or inconsistent with, the owner's rights. *Whitaker v. Bank of El Paso,* 850 S.W.2d 757, 760 (Tex.App.—El Paso 1993, no writ) (citing *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 446 (Tex.1971)).

In response, Williams complained appellees (i) searched his home and seized items, including a revolver and various videotapes, which were not within the scope of the warrant, (ii) improperly stored and handled the seized items, and (iii) despite repeated requests, refused to return the seized items. As previously noted, Judge

---

4. We further note that information, instructions, and manuals are not tangible personal property; therefore, a claim for negligence stemming from misuse of policy and proce-

dure manuals "does not give rise to a claim under the Tort Claims Act." *Petta,* 44 S.W.3d at 580–81.

Fitzwater specifically held the officers did not exceed the scope of the warrant. ·The judge also held that Williams failed to introduce competent summary judgment evidence in support of his claims that appellees mishandled and improperly stored property and refused to return the videotape. Because these facts were fully litigated in the federal case and were essential to Williams's claims his Fourth Amendment rights had been violated, we conclude collateral estoppel bars Williams's state law claims for conversion.[5]

### Trespass

▆▆▆ In their motions for summary judgment, appellees contended they were entitled to summary judgment because appellants' claims for trespass were barred by collateral estoppel. Trespass to real property occurs when a person enters another's land without consent. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 833 (Tex.App.—Dallas 2000, no pet.). No trespass occurs when the entry is authorized as a matter of law. *Hawkins v. Groom*, 893 S.W.2d 123, 125 (Tex.App.—Eastland 1995, no writ); *see Carr v. Mobile Video Tapes, Inc.*, 893 S.W.2d 613, 623 (Tex.App.—Corpus Christi 1994, no writ). In support of their motions, appellees cited the portion of Judge Fitzwater's opinion addressing Williams's claim for a violation of his Fourth Amendment right against unreasonable searches and seizures. Judge Fitzwater held the DPD officers

had a reasonable basis for investigating Shahravan's allegations, the search warrant was based on probable cause, there was no reason to question the validity of the search warrant, and the officers did not exceed the scope of the warrant. Thus, the search warrant was authorized by law.

Nevertheless, appellants argued Salverino and Sanders exceeded the scope of the warrant and "unlawfully interfered with Williams'[s] property rights." These precise facts, however, were fully litigated in the federal case and were essential to Williams's claim that his Fourth Amendment right against unreasonable searches and seizures had been violated. Accordingly, we conclude collateral estoppel bars appellants' state law claims for trespass.

### Intentional Infliction of Emotional Distress, Defamation, Conspiracy to Defame, and Invasion of Privacy

▆▆ Appellees also contended they were entitled to summary judgment because appellants' claims for intentional infliction of emotional distress, defamation, conspiracy to defame, and invasion of privacy were barred by collateral estoppel. We address each cause of action in turn. A party who claims intentional infliction of emotional distress must prove (i) the defendant acted intentionally or recklessly, (ii) the defendant's conduct was extreme and outrageous, (iii) the outrageous conduct caused the complainant emotional

---

**5.** In reaching this conclusion, we necessarily reject Williams's arguments that his conversion claim cannot be barred because the federal court (i) "did not consider these conversion claims" or (ii) "was not presented with evidence that DPD personnel failed to retain evidence in the property room." With respect to his first argument, we reiterate that collateral estoppel prevents the relitigation of any ultimate fact issue previously litigated even though the subsequent suit brings a different cause of action. *Petta,* 44 S.W.3d at 579. Thus, it is irrelevant whether the federal

judge considered the state conversion claims; what is relevant is whether Judge Fitzwater considered ultimate fact issues "essential to the prior judgment, and identical to an issue" in this action. *Petta,* 44 S.W.3d at 579. Because we conclude he did, Williams's first argument lacks merit. With respect to his second argument, we note that the federal judge was not presented with evidence DPD personnel failed to properly store seized evidence and timely return it because Williams failed to meet his burden of presenting such evidence in federal court.

distress, and (iv) the emotional distress suffered was severe. *Southwestern Bell Mobile Sys., Inc. v. Franco*, 971 S.W.2d 52, 54 (Tex.1998); *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993).

 Appellants responded that their claim for intentional infliction of emotional distress was based on the violations of DPD policy which resulted in the release of their names as rape suspects and the circulation of a "very personal and embarrassing videotape." Appellants argued this reckless or possibly intentional behavior was so extreme and outrageous that it caused them severe emotional distress. They further argued their claims were not barred because the federal court did not address these issues. The record belies appellants' assertions. As noted previously, Judge Fitzwater held (i) appellants failed to produce any evidence that Click, Chandler, Sanders, or Salverino advised the media that appellants were rape suspects, (ii) once the officers executed the search warrant, all information contained in the warrant, including appellants' names as suspects, became public information, (iii) Williams did not produce any competent summary judgment evidence regarding the "mishandling" or inappropriate circulation of the videotape, and (iv) there was no proof appellees were involved in the alleged disclosure or distribution of the tape and its contents. Because these facts were fully litigated in federal court and essential to both federal and state law claims, appellants' claims for intentional infliction of emotional distress are barred.

 We reach a similar conclusion with respect to appellants' defamation and conspiracy to defame claims. To maintain a defamation cause of action, a plaintiff must prove the defendant (i) published a false statement about the plaintiff (ii) that was defamatory (iii) while acting with either actual malice, if the plaintiff was a public official or public figure, or negli-

gence, if the plaintiff was a private individual, regarding the truth of the statement. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

Appellants contended the federal court did not address the statements at issue under this claim which are "two statements made by Goelden, and approved in advance by Click, Salverino, Chandler, and Sanders, that 1) Williams and Irvin were participants in a sexual assault, and 2) there existed videotaped evidence of the assault." In addressing appellants' federal claims for invasion of their right to privacy, Judge Fitzwater held Goelden could not have violated appellants' federal right to privacy by disseminating information that had already been made public by the execution of the search warrant and there was no evidence Goelden disclosed the contents of the videotape. Because the issues upon which appellants base their defamation claims were previously litigated, we conclude their defamation causes of action are barred by collateral estoppel. Consequently, their conspiracy to defame claims are also barred. *See Dolcefino v. Randolph*, 19 S.W.3d 906, 932 (Tex.App.—Houston [14th Dist.] 2000, pet. denied) (holding claim for conspiracy to defame must fail when claim for defamation had no merit).

 Finally, appellants claimed appellees invaded their privacy by releasing their names as suspects, "pronouncing their guilt," and circulating a very private videotape. As noted previously, Judge Fitzwater held (i) there was no evidence Click, Chandler, Sanders, Goelden, or Salverino advised the media that appellants were rape suspects, (ii) the information found in the search warrant, including appellants' names as suspects, became public information when the warrant was executed, (iii) the right to privacy does not attach to information that is in the public domain, (iv) there was no competent summary

judgment evidence that the videotape was mishandled or inappropriately circulated, and (v) there was no proof appellees were involved in the alleged disclosure or distribution of the tape and its contents. As with appellants' other state law claims, we conclude appellants' claims for invasion of privacy are barred by collateral estoppel. We overrule appellants' first and second issues. In light of our disposition of these issues, we need not address appellants' third issue regarding whether the individual appellees were entitled to official immunity.

### GOELDEN'S SUMMARY JUDGMENT

In two additional issues, appellants contend the trial judge erred in granting summary judgment in favor of Goelden based on limitations. Appellants first claim summary judgment was improper because their summary judgment evidence created a fact issue about whether they exercised reasonable diligence in serving Goelden. Additionally, they argue summary judgment was improper because Goelden had notice of the state claims, avoided service, and suffered no prejudice by any delay in service of the petition.

The mere filing of a suit will not interrupt or toll the statute of limitations; rather, plaintiffs must exercise reasonable diligence in procuring the issuance and service of citation to interrupt the statute. *Rigo Mfg. Co. v. Thomas*, 458 S.W.2d 180, 182 (Tex.1970); *Clemons v. Denson*, 981 S.W.2d 941, 946 (Tex.App.— Houston [1st Dist.] 1998, pet. denied). To obtain summary judgment on the grounds that an action was not served within the applicable limitations period, the movant must show that, as a matter of law, diligence was not used to effectuate service. *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990) (per curiam) (citing *Zale Corp. v. Rosenbaum*, 520 S.W.2d 889, 891 (Tex. 1975) (per curiam)). Once the movant establishes lack of diligence, the nonmovants must then come forward with competent summary judgment evidence creating a genuine issue of material fact. *See Oram v. Gen. Am. Oil Co.*, 513 S.W.2d 533, 534 (Tex.1974) (per curiam); *Swilley v. Hughes*, 488 S.W.2d 64, 67–68 (Tex.1972).

Appellants argue the trial judge erred in granting summary judgment in favor of Goelden because fact issues exist. Having reviewed the summary judgment evidence, we agree. In his motion for summary judgment, Goelden argued appellants did not exercise reasonable diligence in serving him. Goelden further contended he was entitled to summary judgment because appellants failed to act as ordinarily prudent persons would act under the same circumstances and failed to act diligently up until the time Goelden was served. In his affidavit, Goelden testified that in November 1998, while his motion for summary judgment in the federal lawsuit was pending, he moved to Rockwall. He notified the appropriate post offices of his forwarding address. Although he retired from the DPD on April 13, 1999, he provided his Rockwall home address, telephone number, and personal pager number to "numerous people in the DPD's Crimes Against Persons (CAPERS) Department, and the DPD in general." Goelden testified he instructed the telephone company to list his Rockwall telephone number under his name and his telephone number is still listed publicly today. Goelden testified that, although he occasionally ran errands and took two one-week vacations during the six-month period between the filing of this suit and service of citation, he spent the majority of his time at or near his home. Goelden also testified he was unaware anyone was attempting to serve process on him and he "did not evade service of process, purposefully or otherwise."

In response to Goelden's motion for summary judgment, appellants claimed

their efforts to serve Goelden were extensive. In his affidavit, deputy Leon Tynes testified he was responsible for attempting to serve Goelden and the remaining defendants. Tynes received the petitions on April 14, 1999 and attempted to serve all defendants immediately. Although Tynes was able to serve the remaining defendants, his attempts to serve Goelden failed. When he tried to serve Goelden at the DPD on April 16, 1999, a DPD employee told him Goelden had retired and no longer worked there. The employee did not have any information on where Goelden could be located and told Tynes that even if he had such information, he could not release it. Three days later, Tynes contacted appellants' local counsel and told them he could not serve Goelden at the DPD. Shortly thereafter, Tara Stanton, an associate with appellants' Washington, D.C., counsel, contacted Tynes and told him she would try to get an address for Goelden. Tynes spoke with Stanton several times and sometime after June 1, 1999, they both agreed to keep working on locating Goelden. Tynes testified he checked computer records "on an ongoing basis for any address or identifying information ... [and] visited the legal department and the personnel department of the [DPD]." At each department, he asked about Goelden but was told he was no longer in the area and had moved away. When Tynes heard that a David Goelden was working at a local gym, he attempted service at the gym but the individual who worked there was not Goelden. Tynes again spoke to Stanton and told her he was unable to serve Goelden. Stanton asked Tynes to return the petition to her office which he did. According to Tynes, he did "everything that [he] could possibly do to attempt to locate an address for Goelden and to serve him with the Petition."

In her affidavit, Stanton testified that on May 4, 1999, after Tynes told her he was unable to serve Goelden at the DPD, she contacted John Arnold, Goelden's attorney of record in the federal lawsuit. She asked Arnold to accept service of the petition since Goelden could not be served at the DPD. Arnold said he would speak with another attorney involved in the case and call her back. After waiting two weeks for Arnold to call back, Stanton again called Arnold. During this conversation, Arnold said he would not accept service on Goelden's behalf. When Stanton asked for Goelden's home address, Arnold told her she could not have it. Stanton testified that, in addition to Tynes's attempts to locate Goelden, she tried several methods of her own to locate Goelden's address, including making numerous calls to information for Dallas and the surrounding areas, reviewing files from the federal action, and accessing various web sites on the internet that specialize in locating people. On September 24, 1999, the day Tynes returned the petition to Stanton, she hired a private investigator who subsequently located Goelden and served him at his home on October 11, 1999.

Tynes's and Stanton's testimony raises a fact issue on whether appellants exercised reasonable diligence in serving Goelden. Because a fact issue exists, the trial judge erred in granting summary judgment in favor of Goelden. We sustain appellants' first additional issue. In light of our disposition of this point, we need not address appellants' second additional issue. TEX. R.APP. P. 47.1.

We reverse the summary judgment granted in favor of Goelden and remand for further proceedings. In all other respects, we affirm the trial court's judgment.